IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| Osvaldo de la Fuente and Victor Hugo Tapia Romero | ) ) ) Civil Action File No. |
| Plaintiffs, | ) ) |
| | ) **COMPLAINT – CLASS ACTION** |
| v. | ) ) |
| Columbia Recycling Corp. and Gold Pond Corp. | ) ) ) |
| Defendants. | ) **JURY TRIAL DEMANDED** ) |

## <u>CLASS AND COLLECTIVE ACTION COMPLAINT</u>

COMES NOW, Plaintiffs Osvaldo de la Fuente ("Osvaldo") and Victor Hugo Tapia Romero ("Victor") (collectively, "Plaintiffs"), by and through their counsel, and bring this Complaint for damages against Defendants Columbia Recycling Corp. and Gold Pond Corp. (collectively, "Defendants").

**I.**     <u>Introduction</u>

1.     This case involves visa fraud and Defendants' false promises to Plaintiffs and other highly skilled Mexican engineers that they would be employed in high paying and high skilled engineering jobs in the United States under the TN visa program.

2.      Plaintiffs and similarly situated Mexican engineers relied on these false promises, secured TN visas, and travelled to the United States, to begin the promised work at the Defendants' recycling facility in Dalton, Georgia.

3.      On arrival at the job site, Plaintiffs and other highly skilled Mexican engineers learned that the job promises were false.  They were required to perform manual labor rather than the promised engineering jobs.  They were paid low hourly wages rather than the higher salary wages promised.  They were required to work excessive hours, subjected to terrible working conditions, and victimized by illegal wage practices.

4.      The manual labor and low pay imposed on Plaintiffs and other Mexican engineers violated the terms of their TN visas.

5.      Further, because Defendants required all laborers—not just the TN visa holders—to pay for their own tools, personal protective equipment, and drinking water, all laborers at the recycling facility suffered violations of their right to be paid overtime wages without illegal deductions.

6.      Defendants also cheated Plaintiffs, other engineers, and the U.S. Internal Revenue Service by filing false informational tax returns that failed to report the wages (and applicable withholdings) they paid to the engineers.

7.      For these reasons, Plaintiffs bring collective action claims for

violations of the overtime provisions of the Fair Labor Standards Act ("FLSA") and class action claims (a) for Defendants' violations of the terms of Plaintiffs' and other TN visa holders' employment contracts and (b) for Defendants' filing of false information returns with the U.S. Internal Revenue Service.

8.     Defendants retaliated against Plaintiff Osvaldo when he complained about his low wages by assigning him to the most dangerous and undesirable job at the plant.

9.     Therefore, Plaintiff Osvaldo brings an individual claim for Defendants' violations of the FLSA's anti-retaliation protections.

## II.     <u>Jurisdiction and Venue</u>

10.     The Court has subject matter jurisdiction over the FLSA and Internal Revenue Code claims in this action because they arise under federal statutory law.[1]

11.     The Court has jurisdiction over Plaintiffs' pendant state law claim because it is part of the same case or controversy as Plaintiffs' federal claims.[2]

---

[1] *See* 28 U.S.C. § 1331.
[2] *See* 28 U.S.C. § 1367

### III.    Parties

12.    Plaintiffs are residents of Kentucky. They submit themselves to the jurisdiction of this Court.

13.    Plaintiff Osvaldo came to Georgia from Mexico on a TN visa in late May 2022. He started working for Defendants on or about May 31, 2022.

14.    Plaintiff Osvaldo holds a Bachelor of Science in Electronics Engineering.

15.    Plaintiff Victor came to Georgia from Mexico on a TN visa in mid-June 2022.  He started working for Defendants on or about June 18, 2022.

16.    Plaintiff Victor holds a Bachelor of Science in Industrial Engineering.

17.    At all relevant times, Plaintiffs and other similarly situated workers were non-exempt employees of Defendants within the meaning of the FLSA.

18.    Plaintiffs have consented in writing to become party Plaintiffs in this action for claims under the FLSA.  *See* Ex. A.

19.    Defendant Columbia Recycling Corp. is a domestic for-profit corporation with its principal office in Dalton, Georgia.

20.    The officers of Columbia Recycling Corp. are CEO Robert G. Goldberg, CFO Phillip M. Goldberg, and Secretary Sharon K. Ponders.

21.     Defendant Gold Pond Corp. is a domestic for-profit corporation with its principal office in the Dalton, Georgia.  Gold Pond Corp. directed earnings statements and payments to be issued to Plaintiffs.

22.     The name "Gold Pond Corp." is derived from the names of its officers: CEO Robert G. Goldberg, CFO Phillip M. Goldberg, and Secretary Sharon K. Ponders.

23.     At all relevant times, Columbia Recycling Corp. and Gold Pond Corp. both controlled the terms and conditions of Plaintiffs' employment, their work schedules, and pay.  Both Defendants were "employers" of Plaintiffs and other similarly situated workers within the meaning of the FLSA.

24.     Defendants are an enterprise engaged in commerce or in the production of goods for commerce.

25.     Defendants have a gross volume of sales made or business done of not less than $500,000 per year.

**IV.** <u>**Background and Structure of the TN Visa Program.**</u>

26.     The North American Free Trade Agreement ("NAFTA"), which

came into force on January 1, 1994, created a special trade relationship between

the United States, Mexico, and Canada.[3]

27.     The U.S. government created the TN nonimmigrant classification,

commonly known as the TN visa, to permit Mexican and Canadian professionals

in certain occupations ("TN profession") to temporarily enter the United States

for employment within their profession.[4]

28.     Engineers are among the categories of professionals permitted entry

into the United States with TN visas.[5]

29.     A Mexican citizen applying for a TN visa:

> must present documentation sufficient to satisfy the consular officer …
> that the applicant is seeking entry to the United States to engage in
> business activities for a United States employer(s) or entity(ies) at a
> professional level, and that the applicant meets the criteria to perform at
> such a professional level. This documentation may be in the form of a
> letter from the prospective employer(s) in the United States or from the
> foreign employer, and must be supported by diplomas, degrees or
> membership in a professional organization…The documentation shall
> fully affirm:

---

[3] *See generally,* North American Free Trade Agreement, Can.-Mex.-U.S., Dec. 17, 1992, 32 I.L.M 289 (1993).

[4] *See* 8 C.F.R. § 214.6(a).

[5] *See* 8 C.F.R. § 216.4(c) (incorporating Appendix 1603.D.1 to Annex 1603 of the NAFTA).

(A) The [TN] profession of the applicant;

(B) A description of the professional activities, including a brief summary of daily job duties, if appropriate, in which the applicant will engage in for the United States employer/entity;

(C) The anticipated length of stay;

(D) The educational qualifications or appropriate credentials which demonstrate that the … Mexican citizen has professional level status; and

(D) The arrangements for remuneration for services to be rendered.[6]

30.     The TN visa applicant "must engage in a prearranged business activity at a professional level for a U.S. or foreign employer."[7]

31.     The offered salary must be "indicative of professional-level employment in the United States."[8]

32.     Once an applicant has provided the required evidence set forth in the preceding paragraph, the applicant is admitted under the TN nonimmigrant visa classification for a period of up to three years.[9]

---

[6] 8 C.F.R. § 214.6(d)(3)(ii).

[7] 9 F.A.M. § 402.17-5(A).

[8] 9 F.A.M. § 402.17-6(c)(2)(a).

[9] *See* 8 C.F.R. § 214.6(e).

33.     The TN visa is tied to the associated employer for the duration of the

TN visa period unless the TN visa holder submits a verified petition to USCIS

seeking to add or change employers.[10]

34.     Since 1997, the number of TN visas issued has increased

significantly every year, with the exception of 2020 due to the COVID-19

pandemic.  For example, in 1997, 287 TN visas were issued to Mexican

nationals.[11]  By 2007, the number had increased to 4,060.[12]  In 2017, it had grown

to 15,993 visas;[13]  In 2021, 24,881 TN visas were issued to Mexican nationals.[14]

---

[10] 9 F.A.M. § 402.17-5(A)(7) (the petitioner must file a Form I-129, Petition for Nonimmigrant Worker).

[11] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 1998), Statistics/NIVDetailTables/FY1998_NIV_Detail_Table.pdf (last viewed March 25, 2022).

[12] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 2007), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY07NIVDetailTable.pdf (last viewed March 25, 2022).

[13] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 2017), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY17NIVDetailTable.pdf (last viewed March 25, 2022).

[14] *See* Nonimmigrant Visas Issuances by Visa Class and Nationality, U.S. Department of State (FY 2021), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY21NIVDetailTable.pdf (last viewed Oct. 23, 2022).

35.     Oversight of TN visa holders' working conditions in the United States is largely unregulated.  As a consequence, there have been multiple reports of abuses—including misrepresentations in employment contracts—of TN visa workers,[15] as well as several lawsuits.[16]

**V.     <u>Facts</u>**

     *a.  Contract Claims*

36.     On or about March 28, 2022, Defendants provided the following job offer[17] to Plaintiff Victor:

---

[15] Coerced under NAFTA: Abuses of Migrant Workers in the TN Visa Program and Recommendations for Reform, Centro de los Derechos del Migrante (Dec. 2017), https://cdmigrante.org/wp-content/uploads/2018/01/Coerced-under-NAFTA_-Abuses-of-Migrant-Workers-in-TN-Visa-Program.pdf (last viewed March 25, 2022).

[16] *See, e.g., Martinez-Rodriguez v. Giles*, 31 F.4th 1139 (9th Cir. 2022); *Castellanos v. Wordlwide Distribution Sys. USA, LLC,* No. 2:14-CV-12609, 2016 WL 11678220, at *8 (E.D. Mich. June 20, 2016)

[17] For the purpose of this pleading, Plaintiff Victor's address has been redacted from the job offer.



October 21st, 2021

**Mr. Victor Hugo Tapia Romero**



Mexico,
54879.

Dear Mr. Victor Hugo Tapia Romero:

I am pleased to offer you employment as an Industrial Engineer at Columbia Recycling Corporation. We are satisfied with your academic background and professional knowledge. We believe that you will be a valuable asset to the growth of this company's business in the U.S. Per our agreement, the terms and conditions of your employment shall be as the following:

- Job Title: Industrial Engineer
- Employment period: Up to three years from October 21st, 2021, but the contingent approval of TN–2 petition by the U.S. CIS.
- Annual Salary: **$38,500.00 plus overtime and monthly bonus**
- Other Benefits: One month of housing and transportation support

We look forward to seeing you as a TN–2 employee with the above terms and conditions.

Respectfully,
/s/

Shannon Warnix
Human Resources

1001 Chattanooga Ave, Dalton, GA 30720, United States

37.     On or about March 28, 2022, Defendants provided a nearly identical job offer to Plaintiff Osvaldo.

10

38.     The only difference between the offers was the job title. Plaintiff Osvaldo was to work as an Electronics Engineer, rather than as an Industrial Engineer.

39.     Between September 2021 and August 2022, Defendants sent substantively identical job offers – the only difference being the type of engineer in the job title – to dozens of engineers in Mexico.

40.     Plaintiffs and other similarly situated TN visa holders accepted the job offers.

41.     Defendants directed Plaintiffs to secure TN visas pursuant to the job offers and provided letters ("Support Letters") to the U.S. Embassy in support of the TN visa applications.

42.     The Support Letters were provided pursuant to 8 C.F.R. 214.6(D)(3), under the Columbia Recycling Corporation letterhead and were addressed to the United States Embassy in Mexico.

43.     The Support Letters were fraudulent in that they falsified the amounts that Plaintiffs would be paid, their job titles and the positions of their employment.

44.     Plaintiffs did not know the Support Letters were fraudulent because, among other things, they were consistent with the job offers that Plaintiffs had accepted.

45.     In reliance on the job offers and Support Letters submitted by Defendants to the U.S. government in support of TN visa applications, Plaintiffs and other similarly situated workers paid U.S. government visa fees, traveled to consular interviews in Mexico, secured TN visas, and traveled to the United States, to work for Defendants.

46.     The job offers, which Plaintiffs and other similarly situated workers accepted, were contracts under Georgia law.

47.     The parties were able to contract.

48.     There was consideration moving the contracts.

49.     The parties assented to the terms of the contracts.

50.     There was a subject matter upon which the contracts could and did operate.

51.     Defendants violated the contracts by failing to employ Plaintiffs and other similarly situated workers as engineers.

52.     Defendants violated the contracts also by failing to pay Plaintiffs and other similarly situated workers an annual salary of "$38,500 plus overtime and monthly bonus."

53.     A salary of $38,500 for non-overtime work is the equivalent of $18.51 per hour ($38,500 ÷ 52 weeks ÷ 40 hours).

54.     Defendants paid Plaintiffs and other similarly situated workers a regular rate of pay of $13.00 per hour. This is $5.51 per hour less than the promised contract rate.

55.     At the agreed-to contract rate of $18.51 per hour, Defendants should have paid Plaintiffs and other similarly situated workers overtime wages at the rate of $27.76 ($18.51 x 1.5).

56.     Defendants paid Plaintiffs and other similarly situated workers an overtime rate of $19.50 per hour, which is $8.26 less than the overtime rate Defendants were required to have paid Plaintiffs based on the promised salary "plus overtime and monthly bonus" set forth in the contract.

57.     By failing to pay Plaintiffs and other similarly situated workers the promised wage rate, Defendants breached the contracts.

### b. *FLSA Overtime Claims*

58.     During the first month of employment, Defendants paid Plaintiffs' and other similarly situated workers' rent for apartments Defendants provided.

59.     During the first month of employment, Defendants paid Plaintiffs' transportation costs from the employer-provided housing to Defendants' worksite.

60.     Defendants paid Plaintiffs and other similarly situated workers a $100 "bonus" if they worked more than 72 hours in a two-week period.  This was a nondiscretionary bonus within the meaning of the FLSA and its implementing regulations.

61.     Plaintiffs and other similarly situated workers were required to purchase tools of the trade such as drills, pliers, and screwdrivers for use at Defendants' carpet recycling plant, as well as bottled drinking water (despite the hot temperatures in the plant, Defendants did not provide free drinking water to their employees).

62.     Defendants also required Plaintiffs and other similarly situated workers to buy personal protective equipment, such as gloves, safety goggles, masks, and aprons, directly from the Defendants.

63.    Plaintiffs purchased these tools of the trade, safety equipment, and bottled drinking water on behalf of or for the convenience of Defendants.

64.    Defendants did not reimburse Plaintiffs and other similarly situated workers for expenses incurred by Plaintiffs and other similarly situated workers primarily for the benefit or convenience of the employer, such that the expenses cut into mandatory overtime pay requirements of the FLSA.

65.    In violation of the FLSA, Defendants did not pay Plaintiffs and other similarly situated workers overtime at the rate of one-and-one-half times the regular rate of pay promised in Defendants' job offers and which Defendants were required to pay as a condition of the U.S. government's issuance of the TN visas.

66.    In violation of the FLSA, Defendants did not pay Plaintiffs and other similarly situated workers overtime wages at the rate of one-and-one-half times the regular rate of pay, including (a) the reasonable cost or the fair value of the housing and transportation Defendants provided to Plaintiffs and other similarly situated workers; and (b) the nondiscretionary bonuses Defendants paid to Plaintiffs and other similarly situated workers.

67.    In violation of the FLSA, the unreimbursed cost of the tools of the trade, the safety equipment, and the water Plaintiffs and other similarly situated

workers purchased for use at Defendants' recycling plant cut into the overtime wages Defendants were required to pay to these workers.

       *c. FLSA Retaliation Claims*

68.    Plaintiff Osvaldo complained to his supervisors and Defendants' human resources staff about Defendants' failure to properly pay overtime and the required wages.

69.    These complaints were statutorily protected conduct under the FLSA.

70.    In retaliation for lodging these complaints, Defendants required Plaintiffs Osvaldo to work in the section of Defendants' recycling plant where used carpet and carpet pads were ground into powder for repurposing. Defendants' employees, including Plaintiff Osvaldo, considered this to be the least desirable work assignment because of the heat; the carpet fiber powder that permeated the air, which made it difficult to breathe and exposed the workers to hazardous toxins; the strong stench of animal urine from the carpet pads; nails, tacks, and staples in the carpet and pads that punctured the workers' gloves; and the weight of the bales the workers had to process.  In a ten-hour shift, individual workers typically would have to grind between 4,500 and 6,000 pounds of material.

71.     In violation of the FLSA, Defendants retaliated against Plaintiff Osvaldo and other similarly situated workers who complained about their wages, including their overtime wage rates.

> d.   *Claims for False Information in Defendants' Tax Returns*

72.     Defendants submitted false information returns that failed to report Plaintiffs' and other similarly situated workers' wages (and withholdings) in quarterly and annual information returns Defendants filed with the U.S. Internal Revenue Service ("IRS"), or that intentionally failed to associate Plaintiffs' and other similarly situated workers' wages (and withholdings) with their corresponding Social Security numbers in quarterly and annual information returns Defendants filed with the IRS.

73.     For example, though Plaintiffs were authorized to work in the United States and obtained valid Social Security numbers, but Defendants did not process their wages and withholdings using those Social Security numbers.

74.     Rather, Defendants paid Plaintiffs' wages and deducted payroll tax withholdings, but (1) omitted such wages and withholdings in Defendants' quarterly and annual information returns, or (2) reported the wages and withholdings to the IRS using falsified Social Security numbers.

75. On November 3, 2022, Plaintiff Osvaldo requested and received his earnings records from the U.S. Social Security Administration ("SSA"). The SSA records show no earnings or withholdings were reported for the time period when Plaintiff Osvaldo worked for Defendants.

**VI.  FLSA Collective Action Allegations**

76. Plaintiffs bring their FLSA claims on behalf of themselves and those individuals who may opt into this action pursuant to 29 U.S.C. § 216(b) and who were not paid required overtime wages at Defendants' operations between November 18, 2019 and the date of preliminary approval of the opt-in class.

77. Plaintiffs bring their FLSA collective action claims on behalf of two classes of workers:

> a. FLSA Collective Action Class I: All TN visa holders employed at Defendants operations who suffered (a) underpayment of overtime at the rate of one-and-a-half times the mandated regular rate of pay in Defendants' job offers; and/or (b) underpayment of overtime at the rate of one-and-a-half times the regular rate of pay, including employer-provided transportation, housing, and non-discretionary bonuses.

> b. FLSA Collective Action Class II: All employees at Defendants' operations who were required to purchase tools of the trade, safety equipment, and/or drinking water, the cost of which Defendants did not reimburse and which cut into Plaintiffs' and other employees' overtime wages.

78.     Plaintiffs and other TN visa holders in FLSA Collective Action Class I were subject to the same policies and practices of Defendants with respect to (a) underpayment of overtime at the rate of one-and-a-half times the mandated regular rate of pay in Defendants' job offers; and/or (b) underpayment of overtime at the rate of one-and-a-half times the regular rate of pay, including employer-provided transportation, housing, and non-discretionary bonuses.

79.     Plaintiffs and other employees of Defendants in FLSA Collective Action Class II were subject to the same policies and practices of Defendants with respect to the requirement that the employees purchase tools of the trade, safety equipment, and drinking water, the cost of which Defendants did not reimburse and which cut into Plaintiffs' and other employees' overtime wages.

80.     Common proof applicable to Plaintiffs and other similarly situated workers in FLSA Collective Action Classes I and II will show that the Defendants failed to properly pay them overtime wages as required by the FLSA.

81.     Plaintiffs believe that there are hundreds of other similarly situated workers who suffered from Defendants' FLSA violations.  Plaintiffs are currently unaware of the identities of all the employees who would be members of the FLSA opt-in classes, but this information is readily ascertainable from the

Defendants' records.  The Defendants therefore should be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, email addresses, and messaging (such as WhatsApp) contact information, if known – of all individuals who were (1) were TN visa holders employed at Defendants' operations between November 18, 2019 and the present; and/or (2) were employed by Defendants and were required to incur expenses primarily for the benefit or convenience of Defendants, and were not reimbursed for such expenses such that it caused overtime violations under the FLSA.

## VII.    Rule 23 Class Action Allegations

82.    The Plaintiffs bring their contract and Internal Revenue Code class action claims (Counts I and II) pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and a class of persons ("the Class") consisting of:

> All individuals who, between November 18, 2016 and the present, (1) received wages from one or more Defendant; and (2) were TN visa holders.

83.    Excluded from the Class are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the class period has had a controlling interest in any Defendant; and all persons who submit timely and otherwise proper requests for exclusion from the Class.

<u>*Numerosity*</u>

84.     There are over 80 TN visa holders who are putative members ("members") of the Class in this action.

85.     The members of the Class are sufficiently numerous that joinder of all members is impractical.

<u>*Existence and Predominance of Common Questions*</u>

86.     Common questions of law and fact exist as to Plaintiffs and all members of the Class and predominate over questions affecting only individual Class members.

87.     These common questions include:

a.   Whether Defendants breached the terms of employment contracts with Plaintiffs and the Class members, including Defendants' promise (a) to employ Plaintiffs and the Class members as engineers; and (b) to pay Plaintiffs and the Class members $38,500 per year plus overtime and bonuses.

b.   Whether Defendants had a policy of failing to pay Plaintiffs and the other Class members as required by law;

c.   Whether Defendants induced Plaintiffs and the other Class members to enter their contracts by fraud;

d.  If fraud was present, whether the fraud constituted willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

e.  Whether Defendants acted in bad faith when the breached their contracts with Plaintiffs and the other Class members.

f.  Whether Defendants filed false information returns with the IRS with respect to the Plaintiffs' and other Class members' wages; and

g.  The nature and extent of class-wide injury and the measure of damages for those injuries.

<u>*Typicality*</u>

88.   Members of the proposed Class have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

89.   Plaintiffs and the proposed class members have the same rights under Georgia contract law and entered contracts that were substantially the same.

90.   Plaintiffs and the proposed class members performed similar work

under similar circumstances giving rise to the same claims.

91.     Plaintiffs and proposed class members suffered similar types of damages.

92.     Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs were employees who worked for the Defendants with TN visas and suffered the same violations as the proposed class members.

93.     Defendants' practices with respect to informational returns submitted to the IRS were the same with respect to Plaintiffs and the Class members.

94.     Plaintiffs' interests are co-extensive with the interests of the Class members; Plaintiffs have no interest adverse to the Class members.

<u>*Adequacy*</u>

95.     Plaintiffs will fairly and adequately represent the interests of the class members.   Their interests do not conflict with the interests of the members of the Class they seek to represent.

96.     Plaintiffs understand that, as Class representatives, they assume a responsibility to the class to represent its interests fairly and adequately.

97.     Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters.   There is no reason why Plaintiffs and their

counsel will not vigorously pursue this matter.

<p align="center">*Superiority*</p>

98.     A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

99.     The damages suffered by each individual Class member may not be sufficient to justify the burden and expense, particularly in light of the transnational nature of this case, of individual prosecution of the litigation necessitated by Defendants' conduct.

100.    Further, it would be difficult for members of the Class to obtain individual redress effectively for the wrongs done to them. If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and the Defendants.

101.    The members of the Class are foreign nationals and migrant workers who lack the means and resources to secure individual legal assistance, have limited command of the English language or familiarity with the United States legal system, and are particularly unlikely to be aware of their rights to prosecute these claims.

102.    Individualized litigation also presents a potential for inconsistent or

contradictory judgments and increases the delay and expense to all parties and the Court system.

103.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

104.    This case does not present individualized factual or legal issues which would render a class action difficult.

105.    In the alternative, the Class may be certified because: (a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

<u>**Count I**</u>
<u>**Breach of Contract**</u>
**(Class Claim)**

106.    By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

107.    This Count sets forth claims by Plaintiffs and other Class members for Defendants' breaches of contract for employment.

108.    Defendants breached their contracts with Plaintiffs and other similarly situated class members.

109.    As a direct consequence of Defendants' breach of contract, Plaintiffs and other similarly class members suffered economic injuries.

110.    Defendants are jointly and severally liable to Plaintiffs and other similarly situated class members for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by O.C.G.A. § 13-6-2, and interest from the time of the breach until recovery, as provided by O.C.G.A. § 13-6-13.

111.    Because Defendants fraudulently induced Plaintiffs and other similarly situated workers to enter into similar contracts, Plaintiffs and other similarly situated workers are entitled to punitive damages in addition to consequential damages.

112.    Because Defendants acted in bad faith, Plaintiffs and other similarly situated workers are entitled to their expenses of litigation, including attorneys' fees and costs, under O.C.G.A. § 13-6-11.

### Count II
### Filing False Information Returns
**(Class Claim)**

113.    By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

114.    This Count sets forth claims by Plaintiffs and other Class members against Defendants for damages resulting from Defendants' violations 26 U.S.C. § 7434 (filing false information returns).

115.    As set forth in paragraphs 72-75, *supra*, the Defendants provided the IRS false information regarding Plaintiffs' and other Class members' Social Security wages on Defendants' quarterly and annual information returns, in an attempt to defraud the IRS.

116.    Plaintiffs and other Class members therefore are entitled, under 26 U.S.C. §7434(b), to recover the greater of either $5,000.00 for each false information return or damages Plaintiffs and other Class members sustained, the costs of this action, and reasonable attorney's fees.

117.    As required by 26 U.S.C. § 7434(d), Plaintiffs will provide a copy of this Complaint to the Internal Revenue Service.

### Count III
### FLSA Overtime
### (Collective Action Claim)

118.    By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

119.    This count sets forth a claim by Plaintiffs, and by all similarly situated workers who opt into this action pursuant to 29 U.S.C. § 216(b), for damages resulting from Defendants' violations of the FLSA overtime requirements, 29 U.S.C. § 207.

120.    At all relevant times Defendants jointly employed Plaintiffs and all similarly situated workers at their Dalton recycling facility.

121.    Defendants were Plaintiffs' and all similarly situated workers' employers under the FLSA.

122.    The Plaintiffs and the other similarly situated workers regularly worked more than forty hours in a single work week.

123.    Defendants failed to pay Plaintiffs and other similarly situated workers overtime premiums at the rate of one-and-a-half times their regular rate of pay for every hour they worked above forty in a work week.

124.    Defendants' failure to pay an overtime premium based on their employees' regular rate of pay for hours above forty in a work week violated the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

125.    Defendants' violations of the overtime provisions of the FLSA were willful.

126.    The Plaintiffs and the other similarly situated workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

127.    Plaintiffs and other similarly situated workers are also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

128.    Plaintiffs and the other similarly situated workers also seek, and are entitled to, the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

## Count IV
### FLSA Retaliation
**(Individual Claim by Plaintiff Osvaldo)**

129.    By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

130.    This count sets forth a claim by Plaintiff Osvaldo for damages resulting from Defendants' violations of the FLSA protections against retaliation, 29 U.S.C. § 215(a)(3).

131.    Plaintiff Osvaldo engaged in statutorily protected conduct when they complained to Defendants' management and human resources personnel that he was not paid proper overtime wages under the FLSA.

132.    Defendants retaliated against Plaintiff Osvaldo relating to the conditions of his employment for engaging in this protected conduct.

133.    Plaintiff Osvaldo is entitled to compensatory damages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b)

134.    Plaintiff Osvaldo is also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

135.    Plaintiff Osvaldo also seeks, and is entitled to, the attorneys' fees incurred by his counsel, pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs respectfully request a jury trial and that this Court enter an Order:

    a.   assuming jurisdiction over this action;

b.  declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiffs to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible workers who choose to do so to opt-in to this action;

c.  certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

d.  declaring that Defendants violated the FLSA and 26 U.S.C. § 7434(d) (filing false information returns);

e.  declaring that Defendants breached their contracts with Plaintiffs and other Class members;

f.  permanently enjoining Defendants from further violations of the FLSA and Georgia contract law;

g.  granting judgment to Plaintiffs and other similarly situated workers who opt in pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid wages plus an equal amount in liquidated damages, and awarding Plaintiff Osvaldo compensatory and liquidated damages for his FLSA retaliation claims;

h.  granting judgment to Plaintiffs and other Class members on their

claims pursuant to 26 U.S.C. § 7434(d) and awarding them the

greater of either $5,000.00 for each false information return or

damages Plaintiffs and other Class members sustained;

i.  Awarding Plaintiffs and other TN visa workers their costs and

reasonable attorneys' fees; and

j.  Granting such further relief as the Court finds just.

Respectfully submitted this day: November 18, 2022.

*/s/ Daniel Werner*
Daniel Werner
Georgia Bar No. 422070
dan@decaturlegal.com
James Radford
Georgia Bar No. 108007
james@decaturlegal.com
RADFORD & KEEBAUGH, LLC
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
Telephone: (678) 271-0300

Chris B. Hall
Georgia Bar No. 318380
chall@hallandlampros.com
Brian J. Sutherland
Georgia Bar No. 318380
brian@hallandlampros.com
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@hallandlampros.com
HALL & LAMPROS, LLP
300 Galleria Parkway, Suite 300
Atlanta, GA 30339
Telephone: (404) 876-8100

*Attorneys for Plaintiff*

# Exhibit A:
# FLSA Consents

r r d d d r r
r r r d rd r r
r d d r d r r d d d d r

M M

r r r d d d d d r d d
d r r r d d r r r
r r d d r r r
r r d

Osvaldo De la Fuente Ruiz

r

Osvaldo De la Fuente Ruiz (Oct 18, 2022 18:22 EDT)

Oct 18, 2022

r r

r r d d d r r
r r r d rd r r
r d d r d r r d d d d r

M M

r r r d d d d d r d d
d r r r d d r r r
r r d d r r r
r r d

VICTOR HUGO TAPIA

r

VICTOR HUGO TAPIA (Oct 18, 2022 21:05 EDT)

r r

Oct 18, 2022