IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

OSVALDO de la FUENTE and VICTOR
HUGO TAPIA ROMERO,

     Plaintiff,

          v.

COLUMBIA RECYCLING CORP. and
GOLD POND CORP.,

     Defendants.

CIVIL ACTION FILE NO.
4:22-cv-00256-WMR

## ORDER

This matter is before the Court on Plaintiffs' Motion for Conditional Certification and Court-Facilitated Notice [Doc. 21]. The Court held a hearing on the Motion on June 27, 2023. [Doc. 45]. For the reasons set forth below, the Court grants the motion.

## I.    BACKGROUND

Defendants are corporations in the carpet industry based in Dalton, Georgia. [Docs. 19 at 5; 19-3]. Plaintiffs Victor Hugo Tapia Romero and Osvaldo de la Fuente are Mexican nationals. [Doc. 19 at 4, 11]. On October 20, 2021, Defendants sent a job offer letter by mail to Plaintiff Romero through a labor recruiter. [Doc. 26-2].

The letter offered at-will employment as "a Line Technician" starting at $13.50 per hour with a benefit program, company apartment and transportation for one month, and weekly bonus opportunities contingent upon TN visa approval.[1] [*Id.*]. Plaintiff Romero signed the offer on October 21, 2021. [*Id.*]. That same day, Defendants sent another offer of employment. [Doc. 19-1]. This letter offered employment as an "Industrial Engineer" for an employment period "up to three years" for an "annual salary" of "$38,500.00 plus overtime and monthly bonus[es] with "one month of housing and transportation support" subject to TN visa approval. [*Id.*]. Defendants also provided Plaintiff Romero with a support letter for the TN visa application, which listed the position offered as "industrial engineer," included details of the position, listed the employment period as "up to three years," and listed the average employees' earnings as a "minimal annual salary of $38,500.00 plus a standard employee benefits package (housing and transportation)." [Doc. 19-3].

Similarly, Defendants sent a job offer letter[2] by mail to Plaintiff de la Fuente on February 22, 2022. [Doc. 26-1]. The letter offered at-will employment as "a Mechanical Technician" starting at $13.00 per hour with a benefit program,

---

[1] The U.S. Government created the TN visa program to permit certain professionals from Mexico and Canada to enter the United States for employment. *See* 8 C.F.R. § 214.6(a).

[2] The initial offer letters listing Romero's employment as a "Line Technician" [Doc. 26-2] and de la Fuente's employment as a "Mechanical Technician" [Doc. 26-1] do not appear in the pleadings. Instead, they were attached to the Defendants' Motion to Dismiss [Doc. 25].

company apartment and transportation for one month, and weekly bonus opportunities contingent upon TN visa approval. [*Id.*]. Plaintiff de la Fuente signed the offer on March 28, 2022. [*Id.*]. That same day, Defendants sent another offer of employment. [Doc. 19-2]. This letter offered employment as an "Electronics Engineer" for an employment period "up to three years" for an "annual salary" of "$38,500.00 plus overtime and monthly bonus[es] with "one month of housing and transportation support" subject to TN visa approval. [*Id.*]. Defendants also provided Plaintiff de la Fuente with a support letter for the TN visa application, which listed the position offered as "electronics engineer," included details of the position, listed the employment period as "up to three years," and listed the average employees' earnings as a "minimal annual salary of $38,500.00 plus a standard employee benefits package (housing and transportation)." [Doc. 19-4].

Plaintiffs each submitted the support letters to the United States Embassy and received TN visa approval. [Doc. 19 at 4, 12]. Plaintiff Romero began working for Defendants on June 18, 2022, and Plaintiff de la Fuente began working for Defendants on May 31, 2022. [*Id.* at 4]. When Plaintiffs began work, they were not employed as an "Industrial Engineer" or "Electronics Engineer" with a salary. Rather, they were performing manual labor for $13.00 per hour and overtime at $19.50 per hour. [*Id.* at 12, 20]. Plaintiffs claim that the Defendants had no intention

of employing them as an industrial or electronics engineer or providing them with the $38,500 per year salary.

Plaintiffs subsequently filed this action alleging RICO violations under OCGA § 16-14-6(b); breach of contract, filing false information returns under 26 U.S.C. § 7434; a claim for overtime pursuant to the Fair Labor Standards Act ("FSLA"), 29 U.S.C. § 216(b); and an individual claim by Plaintiff de la Fuente for retaliation pursuant to the FLSA, 29 U.S.C. § 215(a)(3). Since filing, eight additional current or former employees of Defendants have filed consent to sue forms. [Docs. 32–35]. Plaintiffs filed offer and support letters for five of the eight potential claimants that are nearly identical to the Plaintiffs' letters.[3] Plaintiffs have also filed nearly identical offer and support letters for nine employees who have yet to file a consent to sue form. [Docs. 21-5–20].

---

[3] For example, (1) David Basaldua Gallegos was offered employment as a "Mechatronics Engineer" for "up to three years" with an annual salary of "$38,500.00" and "one month of housing and transportation support" on February 11, 2022; (2) Juan Carlos M del Campo Zamora was offered employment as a "Mechatronics Engineer" for "up to three years" with an annual salary of "$38,500.00," a "bonus," and "one month of housing and transportation support" on March 7, 2022; (3) Jair Martinez Angeles was offered employment as a "Industrial Engineer" for "up to three years" with an annual salary of "$38,500.00" and "one month of housing and transportation support" on June 6, 2022; (4) Luis Arturo Ibarra Espinoza was offered employment as a "Industrial Engineer" for "up to three years" with an annual salary of "$38,500.00" and "one month of housing and transportation support" on June 6, 2022; and (5) Oscar Alberto Nunez Castro was offered employment as a "Industrial Engineer" for "up to three years" with an annual salary of "$38,500.00" and "one month of housing and transportation support" on December 14, 2021. [Docs. 21-5–20].

Plaintiffs now seek conditional class certification pursuant to 29 U.S.C. § 216(b) and court-facilitated notice. [Doc. 21]. Plaintiffs propose to define the FLSA Collectives as:

a. <u>FLSA Collective Action Subclass I</u>: All TN visa holders employed by one or more Defendant(s) who suffered underpayment of overtime at the rate of one-and-a-half times the regular rate of pay, including employer-provided transportation, housing, and non-discretionary bonuses.

b. <u>FLSA Collective Action Subclass II</u>: All TN visa holders employed by one or more Defendant(s) who suffered underpayment of overtime at the rate of one-and-a-half times the mandated regular rate of pay in Defendant Columbia Recycling Corp[oration]'s job offers.[4]

## II.    LEGAL STANDARD

Under the FLSA, an employee may bring an action for unpaid overtime compensation "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To participate, each employee in a "§ 216(b) collective action must affirmatively opt into the suit" and give consent in writing. *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258–59 (11th Cir. 2008). Because of this opt-in mechanism, "[t]he benefits of a collective action 'depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate.'" *Id.* at 1259 (quoting *Hoffmann–La Roche,*

---

[4] Plaintiffs initially requested three subclasses, and Defendants made individualized arguments concerning the third subclass. But Plaintiff abandoned the third subclass in the reply brief.

*Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "Therefore, the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees." *Morgan*, 551 F.3d at 1259.

The Eleventh Circuit has "sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase." *Id.* at 1260. First, in the "notice stage," the district court must determine "whether such action should be certified," meaning "whether other similarly situated employees should be notified." *Id.* "[A]t this initial stage," the standard is "not particularly stringent" and "fairly lenient" but must be based on "more than only counsel's unsupported assertions that FLSA violations are widespread and that additional plaintiffs would come . . . ." *Id.* at 1260–61 (punctuation omitted); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (noting that a plaintiff's burden is "not heavy . . . and may be met with detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary" (internal citation and quotation omitted)). "The sole consequence of [such] conditional certification is the sending of court-approved written notice to employees." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). The decision to conditionally certify a collective action "may be reexamined once the case is ready for trial." *Morgan*, 551 F.3d at

1261.

"The second stage is triggered by an employer's motion for decertification," which is typically filed after discovery is complete. *Id.* at 1261. At this second step of the two-stage inquiry, the court "has a much thicker record than it had at the notice stage and can therefore make a more informed factual determination" of whether the employees are similarly situated. *Id.* "If the claimants are similarly situated, the district court allows the representative action to proceed to trial." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (internal quotation marks and citations omitted). If they are not similarly situated, "the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Id.* (internal quotation marks and citations omitted). The plaintiffs then proceed to trial on their individual claims. *See id.*

Since the parties have not completed discovery in this case, the inquiry is at the first step. *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007); *see also Campo v. Granite Servs. Int'l, Inc.*, 584 F. Supp. 3d 1337, 1343 (N.D. Ga. 2022).

## III.   DISCUSSION

### A. Plaintiffs and the Putative Class Members are Similar Situated.

The Court finds that Plaintiffs' Motion [Doc. 21] and the attached documents show that Plaintiffs and the putative class members are similarly situated for purposes of conditional certification. Defendants argue that the Court should not conditionally certify the class because Plaintiffs cannot succeed on the merits of their claims, Plaintiffs have failed to provide evidence of additional employees that wish to join the suit, and the claims are too individualized. These arguments are without merit.

First, Defendants argue that Plaintiffs cannot succeed on the merits because the only valid employment contracts were consistent with the employment that Plaintiffs received. As an initial matter, courts do not reach the underlying merits of a case at the conditional certification stage. *See Kerce v. W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1358 (S.D. Ga. 2008); *Pena v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289, 1300 (S.D. Fla. 2014). But regardless, this Court has already reviewed and rejected Defendants' claims that Plaintiffs cannot succeed on the merits of their claims. [*See* Doc. 47]

Second, Defendants argue that Plaintiffs have failed to establish that additional employees would join the suit. Plaintiffs have the burden of demonstrating

that similarly situated individuals would consent to sue if conditional certification is granted. *See Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). "There is no set number of similarly situated individuals that a plaintiff must present to establish the existence of additional potential plaintiffs that desire to opt in." *Miller v. Garibaldi's Inc.*, No. CV414-007, 2015 WL 1170956, at \*3 (S.D. Ga. Mar. 13, 2015). Since this motion was filed, eight potential claimants have filed consent to sue forms, five of which were provided nearly identical offer and support letters as Plaintiffs. [Docs. 21-5–20]. Additionally, Plaintiffs have also filed nearly identical offer and support letters for nine employees that have not provided consent to sue forms. [Docs. 21-5–20]. This is sufficient to meet Plaintiffs' burden. *Cf. Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 4217128, at \*2 (N.D. Ga. Aug. 14, 2013) (finding that the plaintiffs showed "a reasonable basis for their claim that [others wished] to opt-in . . . [where] one consent was filed during the briefing of this motion").

Third, Defendants argue that the claims are too individualized for conditional certification to be granted. "[C]ourts determine whether employees are similarly situated—not whether their positions are identical." *Morgan*, 551 F.3d at 1260. Although there are slight variations in job titles and duties, the nature of the alleged violations is the same. The Plaintiffs and several potential claimants received nearly

identical letters offering engineering positions with an annual salary of $38,500 with benefits and support letters to assist the offerees with obtaining TN visas. Then, when Plaintiffs moved to Georgia to begin work, they realized that the jobs were not consistent with those offers. Instead, they performed manual labor for around $13 per hour. The slight differences in job titles and duties will not defeat a motion for conditional certification. *See, e.g.*, *Riddle v. Suntrust Bank*, No. 1:08-cv-1411-RWS, 2009 WL 3148768, at *2 (N.D. Ga. Sept. 29, 2009) ("At the notice stage, 'variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered . . . .'"); *Tomason v. Stanley*, No. 6:13-CV-42, 2013 WL 5652040, at *4–7 (S.D. Ga. Oct. 16, 2013) (conditionally certifying class where all employees performed manual labor and received pay under an identical structure); *Bradford v. CVS Pharmacy, Inc.*, No. 12-cv-1159-TWT, 2013 WL 425060, at *5 (N.D. Ga. Feb. 4, 2013) ("[I]t is not appropriate for the Court to conduct individualized inquiries at the conditional certification stage, or consider the possibility of having to make individualized inquiries in the future when ruling at this stage."); *Lawson v. Bell S. Telecomm., Inc.*, No. 09-cv-3528-JEC, 2011 WL 3608462, at *7 (N.D. Ga. Aug. 16, 2011) ("Differences in individual factual and employment settings are generally a consideration for the second stage when discovery is complete and the Court has

more information to evaluate.").

Accordingly, the Court determines that Plaintiffs have met their burden of establishing that they are similarly situated to the putative class members for purposes of conditional certification.

## B. Notice

Having determined that Plaintiff has met her light burden at this stage to show that conditional certification is warranted, the Court will now address the appropriate manner of providing notice to the potential collective members. Plaintiffs asks the Court to order Defendants to provide a list of all putative collective members with names, addresses, telephone numbers, email addresses, WhatsApp contact information, any other available contact information, and dates of employment; direct that notice be provided to any potential claimants; authorize notice to putative collective members; and require Defendants to post the notice at their worksites. Defendants argue that the proposed class is too broad and that the nine-month notice period initially proposed by Plaintiffs is too long.

First, Defendants complain that the proposed class extends to potential claimants that began working for Defendants in November 2019. Defendants argue that because Plaintiffs began working for Defendants in early 2022, they have no proof of any violations prior to 2022. At this stage, Plaintiffs do not need proof of

the exact dates that violations occurred. But, while Plaintiffs have not provided proof of earlier violations, they have provided an example of offer and support letters nearly identical to the ones Plaintiffs received as early as November 4, 2021. [Doc. 21-6]

Regardless, the date was chosen due to the applicable statute of limitations for FLSA claims. Willful violations under the FLSA are subject to a three-year statute of limitations, and November 2019 is three years prior to when this action commenced in November 2022. However, Plaintiffs have conceded that November 2019 is not the correct date. "[O]pt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996). So, the date that should be used on the notice should be three years prior to the date the notice is issued. *See, e.g.*, *Reece v. United Home Care of N. Atlanta, Inc.*, No. 1:12-CV-2070-RWS, 2013 WL 895088, at *5 (N.D. Ga. Mar. 8, 2013).

Second, Defendants argue that the nine-month proposed notice period is excessive and instead request a period of sixty days. Plaintiffs have since changed their proposed period to ninety days. The Court finds that ninety days is reasonable.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Conditional Certification and Court-Facilitated Notice [Doc. 21]. The Court conditionally certifies a collective action consisting of "All TN visa holders employed by one or more Defendant(s) who suffered underpayment of overtime at the rate of one-and-a-half times the regular rate of pay, including employer-provided transportation, housing, and non-discretionary bonuses" and "All TN visa holders employed by one or more Defendant(s) who suffered underpayment of overtime at the rate of one-and-a-half times the mandated regular rate of pay in Defendant Columbia Recycling Corp[oration]'s job offers." The Court further **DIRECTS** Defendants to provide to Plaintiffs the name, last-known address, last-known email address, last-known telephone number, any known WhatsApp contact information, last-known job title, dates of employment in each relevant job title, and locations of employment for each relevant job title for each putative collective member in an electronic and importable format within **TWENTY-ONE DAYS** of entry of this Order. The Court **DIRECTS** Plaintiffs to modify the notice to reflect the adjusted time frame. The proposed notice is **APPROVED** subject to the amendments the Court has made. Plaintiffs' counsel will be allowed **NINETY DAYS** to collect consents from opt-in plaintiffs.

**IT IS SO ORDERED**, this 4th day of December, 2023.


_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE