IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| Osvaldo de la Fuente and Victor Hugo Tapia Romero<br><br>Plaintiffs,<br><br>v.<br><br>Columbia Recycling Corp. and Gold Pond Corp.; and Total Employee Solution Support, LLC.<br><br>Defendants. | Civil Action File No.<br>4:22-cv-00256-WMR<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## UNOPPOSED MOTION FOR FINAL ORDER APPROVING CLASS ACTION SETTLEMENT

Plaintiffs Osvaldo de la Fuente and Victor Hugo Tapia Romero (the "Plaintiffs") move for a Final Order Approving Class Action Settlement. There have been no objections to the settlement and no requests for exclusion from the settlement.[1] Columbia Recycling Corp. ("CRC") and Gold Pond Corp. ("GPC") (together the "Settling Defendants") have no opposition to the relief sought by Plaintiffs in the Motion and join in Plaintiffs' request that the Court grant final approval of the proposed class action settlement set forth in the Class Action Settlement Agreement and exhibits thereto, Doc. 140-2 ("Settlement Agreement"), which are incorporated by reference, and enter the proposed Order and Final Judgment submitted herewith or a substantively similar order.

---

[1] Defendant Total Employee Solution Support, LLC ("TESS") is not a party to the Settlement and therefore is not participating in this motion. Therefore, the term "Defendants" in this motion refers only to CRC and GPC.

1

I. **PROCEDURAL HISTORY AND FACTS**

Two representative Plaintiffs filed their Class and Collective Action Complaint against the Settling Defendants on November 18, 2022, alleging class claims for breach of contract and filing false information returns, 26 U.S.C. § 7434; and collective action claims for failure to pay overtime premiums under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Plaintiff Osvaldo de la Fuente also alleged an individual FLSA retaliation claim pursuant to 29 U.S.C. § 215(a)(3). Doc. 1. Defendants filed their Answer on February 13, 2023. Doc. 10.

Following initial case planning and Local Rule 23.1 negotiations, Plaintiffs filed their First Amended Complaint ("FAC"). Doc. 19. The FAC substantially expanded the scope of the lawsuit, adding class claims under the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO") arising out of multiple fraud-related predicate acts. FAC ¶¶ 144-176. The FAC included substantial fact pleading with particularity pursuant to Fed. R. Civ. P. 9(b) in support of the Georgia RICO fraud claims. FAC ¶¶ 44-75.

Plaintiffs filed their Motion for Conditional Certification and Court-Facilitated Notice of their FLSA claims on April 14, 2023, Doc. 21. The Settling Defendants opposed the motion. Plaintiffs filed their reply brief on May 12, 2023. Doc. 37. Before filing their reply, Plaintiffs submitted FLSA Consent to Sue forms on behalf of eight members of the FLSA collective.

Plaintiffs also served extensive written discovery on April 14, 2023.

On April 21, 2023, the Settling Defendants filed a Motion to Dismiss. Doc. 25. Plaintiffs filed a thirty-page opposition brief on May 22, 2023. Doc. 39. On May

30, 2023, Plaintiffs filed a related Rule 56(d) Motion to Defer Consideration of the Settling Defendants' Motion to Dismiss. Doc. 40.

The Court heard oral argument on the Motion to Dismiss and Motion for Conditional Certification on June 27, 2023. Doc. 45. Plaintiffs prepared and submitted proposed findings of fact and conclusions of law before the oral argument. On November 30, 2023, the Court denied the Settling Defendants' Motion to Dismiss. Doc. 47. On December 4, 2023, the Court granted Plaintiffs' Motion for Conditional Certification. Doc. 48. The Settling Defendants answered the FAC on December 12, 2023. Docs. 49, 50.

On December 19, 2023, Plaintiffs filed a consent motion to modify court-facilitated notice of the collective action lawsuit, Doc. 51, which the Court granted on January 2, 2024. Doc. 53. Therefore, in January 2024, Plaintiffs provided notice of the collective action lawsuit to seventy-eight putative members of the collective in the United States and Mexico. Twenty-one individuals opted into the collective action.

The Settling Defendants provided supplemental responses to Plaintiffs' discovery on January 22, 2024 (after the Court denied the Settling Defendants' Motion to Dismiss) and began a rolling document production.

On May 23, 2024, the Settling Defendants filed a "Notice of Fault of Non-Parties" ("Notice") in which they stated that TESS was "wholly or partially at fault concerning some or all of the claims asserted by Plaintiffs in this action." Doc. 70.

In response to discovery, the Settling Defendants produced over 20,000 ESI documents. The Settling Defendants also served twenty-three sets of written discovery demands (Interrogatories and Requests for Production of Documents)

on January 17, 2024 to the named Plaintiffs and opt-in claimants, resulting in substantial document production from the Plaintiffs and substantive interrogatory responses. Plaintiffs served written responses and produced documents responsive to each of the twenty-three sets of discovery. Oct. 13, 2025 Decl. of Daniel Werner ("Werner Decl."), Doc. 154-1, at ¶ 3.

While counsel for Plaintiffs and the Settling Defendants maintained a high level of professionalism, the discovery process was contentious. Plaintiffs' counsel spent substantial time negotiating during the meet and confer process, including but not limited to negotiations relating to document custodian searches and search terms and determining the scope of a protective order. Werner Decl. ¶ 4. Plaintiffs' counsel participated in a detailed meet and confer process to ensure production of all relevant documents, and the Parties sought and received the assistance of the Court regarding the timing of Plaintiffs' Rule 30(b)(6) depositions of the Settling Defendants and the number of depositions Defendants would be permitted to take. *Id.* ¶ 4; Doc. 102.

Plaintiffs' counsel reviewed and coded the tens-of-thousands of documents the Settling Defendants produced and made damages calculations based on the detailed wage and payroll data relating to the class. Counsel also reviewed, coded, and produced thousands of documents in the Plaintiffs' and opt-in claimants' possession, custody, and control. This included taking forensic images of the named Plaintiffs' electronic storage devices and applying searches to that ESI. The extensive review of documents and data permitted Plaintiffs' counsel to fully analyze the strengths and weaknesses of the lawsuit. Werner Decl. ¶ 5.

4

Based on Settling Defendants' Notice of Fault of Non-Parties and the substantial discovery Plaintiffs reviewed, Plaintiffs filed a Consent Motion for Leave to File Second Amended Complaint and to Join Additional Defendant TESS on August 21, 2024. Doc. 85. The Court granted this Motion on August 27, 2024, and Plaintiffs filed their 292 paragraph Second Amended Complaint that same day, adding TESS as a Defendant and including pleading substantial additional facts learned in discovery. Doc. 87.

Shortly after Plaintiffs filed their Second Amended Complaint, settlement discussions began in earnest (Plaintiffs had provided settlement demands earlier in the litigation), and the parties agreed to mediation. On November 22, 2024, after compiling and submitting detailed mediation statements, the Parties attended a full-day mediation conducted by Christopher Parker. As a result of the mediation, Plaintiffs and the Settling Defendants reached a tentative settlement of the case. Werner Decl. ¶¶ 6-7.

Plaintiffs prepared and negotiated the Class Action Settlement Agreement ("Settlement Agreement"), Doc. 140-2, with the Settling Defendants, as well as the motion papers seeking preliminary approval of the class settlement and approval of the FLSA settlement. The settlement issues were complex relating to recoverable damages, the fact that Settling Defendants are small family-owned businesses, the need for international notice, and identifying and securing payment to class members. Werner Decl. at ¶ 10. The Settlement Agreement shows a thoughtful and careful approach to these issues, with detailed provisions relating to notice, communication with Class Members, and facilitating payment of the large amounts agreed to in the settlement. Settlement Agreement § 10. Following a

hearing on the preliminary approval motion, Plaintiffs and the Settling Defendants modified the settlement to exclude individual damages on claims other than Plaintiff Osvaldo de la Fuentes' FLSA retaliation claims and filed the amended settlement agreement and preliminary approval papers. The Court granted preliminary approval of the class settlement and approved the FLSA settlement on August 18, 2025 ("Approval Order"). Doc. 143.

On October 13, 2025, Plaintiffs filed their Unopposed Motion for Attorneys' Fees and Costs. Doc. 154.

Pursuant to the Approval Order, Plaintiffs' counsel has distributed the class notice in English and Spanish to the seventy-eight class members, many of whom were outside the United States. Decl. of Isabella Valadez Regarding Distribution of Notice to Settlement Class Members ("Valadez Decl."), Doc. 157-1, at ¶¶ 4-10, 12. To date, forty-four of the seventy-eight class members have completed and provided Plaintiffs' counsel with Settlement Distribution Forms, *Id.* at ¶ 11. No class member has objected to the class settlement or sought to be excluded from the class. *Id.* ¶ 13. Plaintiffs' counsel has six more months to secure the rest of the Settlement Distribution Forms. The best practicable notice was given, and no one objected.

In all, this has been hard-fought, complex, and protracted litigation involving substantial motion practice, discovery, settlement negotiations, preliminary approval of the class settlement, and distribution of the class notice.

## II.   THE SETTLEMENT AGREEMENT

The essential terms of the Settlement Agreement, Doc. 140-2, are as follows:

**A.   Class Definition.**

1. FLSA Collective Action Subclass I:

    All TN visa holders employed by one or more Defendant(s) who suffered underpayment of overtime at the rate of one-and-a-half times the regular rate of pay, including employer-provided transportation, housing, and non-discretionary bonuses.

2. FLSA Collective Action Subclass II:

    All TN visa holders employed by one or more Defendant(s) who suffered underpayment of overtime at the rate of one-and-a-half times the mandated regular rate of pay in Defendant Columbia Recycling Corp[oration]'s job offers.

3. Rule 23 Class:

    All individuals who, between November 18, 2016, and the present, (1) received wages from Defendant CRC and/or Defendant GPC; and (2) were TN visa holders.

The Parties agree that there are (including the two named Plaintiffs) 23 FLSA Collective Action Members and 78 Class Members (collectively, the "Settlement Class Members").[2] Doc. 140-2, ¶ III.8. The Court already has approved the Parties' settlement of the collective action FLSA claims. Doc. 143 at ¶ 12. Plaintiffs include the FLSA collective action settlement information in this Motion so the Court is aware of the full scope of relief provided in the Settlement Agreement.

---

[2] All FLSA Collective Action Members also are Class Members. In other words, there are a total of 78 workers who would be eligible to recover damages through this Settlement.

7

### B. Creation of the Gross Settlement Fund.

Subject to final Court approval, Class Counsel secured a settlement of Plaintiffs' claims on a class wide basis for significant monetary relief of $1,062,500.00 (the "Gross Settlement Fund") inclusive of all attorney's fees, expenses and costs as discussed below. If the Court approves Class Counsel's Unopposed Motion for Attorneys' Fees and Costs, Doc. 154, each Settlement Class Member who submits a proper claim will receive monetary compensation as follows:

> 1. <u>Group 1</u>: All class members, including the named Plaintiffs, a total of seventy-eight individuals, shall receive $5,648.55 each, for a total of $440,587.06 (75.44% of the Gross Settlement Fund minus attorneys' fees, costs, and expenses) for the Fed. R. Civ. P. 23 class claims.
>
> 2. <u>Group 2</u>: FLSA Collective Action Opt-Ins (FLSA Collective Action Subclasses I and II), including the named Plaintiffs, a total of twenty-three individuals, shall receive an average $5,000 each, in addition to their amount as members of Group 1, for an FLSA total of $108,540.44 (18.59% of the Gross Settlement Fund minus attorneys' fees, costs, and expenses), at an individual pro rata rate to be determined based on the number of work weeks reported.

Doc. 140-2, ¶ III.16.4. Plaintiff Osvaldo de la Fuente will receive $34,872.50 for his FLSA retaliation claim, including liquidated damages (5.97% of the Gross Settlement Fund minus attorneys' fees, costs, and expenses).

The Gross Settlement Fund is not reversionary, meaning that the funds will be paid to all Settlement Class Members without regard or need for them to submit a claim. Excess funds that cannot be distributed or checks that are not negotiated by Settlement Class Members will be donated to Coalicion de Lideres Latinos, Inc., a 501(c)(3) non-profit organization generally serving the interests of the Class. Doc 140-2, ¶ III.16.

### C.   Releases.

In exchange for the above benefits, Settlement Class Members will provide the Settling Defendants with general releases of all known or unknown claims arising out of or relating to the Settlement Class Members' recruitment and employment as of the Effective Date of the Settlement Agreement. Doc. 140-2, ¶ III.15,.

### D.   Notice and Administration.

The Settlement Agreement provides for appropriate notice to the Class Members. The Parties worked jointly to administer the notice and the claims process. The declaration of Isabela Valadez identifies the notice provided to Class Members and confirms compliance with the notice requirements of the Preliminary Approval Order. Valadez Decl. at ¶¶ 3-12. Every class member has received the notice by at least one—and nearly all by more than one—of the approved means. *Id.* at ¶¶6-12. Forty-four of the seventy-eight class members have returned Settlement Distribution Forms, and no class member has objected to the settlement or sought exclusion from the settlement class. *Id.* at ¶¶ 11, 13.

### E.   Attorneys' Fees and Expenses.

The Settlement Agreement provides that for payment of attorneys' fees and expenses out of the Gross Settlement Fund. The Settling Defendants agreed not to oppose or object to Class Counsels' application for all attorneys' fees, costs and expenses in an amount up $478,500, subject to Court approval. Doc. 140-2, ¶ III.26. The Agreement relating to attorneys' fees, costs and expenses was negotiated after the substantive terms of the settlement and were negotiated and agreed upon during the mediation. Oct. 12, 2025, Decl. of Christopher Parker, Doc. 154-8, at ¶¶

9

11-12. On September 6, 2024, Class Counsel filed an Unopposed Motion for Attorneys' Fees and Costs. Doc. 154.

The Court's Preliminary Approval Order properly certified the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). The grounds supporting certification and proper notice are set out in the Memorandum in Support of Joint Motion for Order Preliminary Approving Amended Class Action Settlement, Approving Fair Labor Standards Act Settlement, and Directing Notice and Other Relief. Doc. 140-1.

## IV. The Parties Provided Robust Notice to Class Members

Class Counsel provided class notice pursuant to the Preliminary Approval Order and such notice was the best notice practicable. The provision of Notice included sending the Long Form notice by direct mail, email, text and WhatsApp. Valadez Decl. ¶¶ 6-12.

The notice provided Class Members with the terms of settlement, including amounts of recovery and the attorneys' fees and costs. Notice of Pendency of Class Action, Proposed Settlement, and Hearing, Doc. 140-2, at Ex. A, ¶ 15. No Class Member objected to the settlement or requested to be excluded. Valadez Decl. at ¶ 13.

## III. The Court Should Grant Final Approval of the Settlement Agreement

Both Eleventh Circuit case law and the text of Rule 23 itself provide factors for determining whether a settlement should be approved under Rule 23. Those factors indicate that the settlement is fair and reasonable and should be approved by the Court.

### a. Legal Standard

Consistent with the Eleventh Circuit's strong preference in favor of settlement of class litigation, a court should approve a class action settlement under Rule 23 if it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *In re S. Co. Shareholder Derivative Litig.*, No. 1:17-CV-725-MHC, 2022 WL 4545614, at *5 (N.D. Ga. June 9, 2022). Rule 23(e)(2) specifies that settlements may be approved if the settlement class was adequately represented, the settlement was negotiated at arm's length, and the relief provided is adequate, taking into account factors such as the risk of litigation, method for processing class members' claims, and agreements concerning attorneys' fees. Fed. R. Civ. P. 23(e)(2). In *Bennett v. Behring Corp.*, the Eleventh Circuit outlined factors relevant to determining whether a settlement is fair and reasonable under Rule 23(e):[3]

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d 982, 986 (11th Cir. 1984); *see also Leverso v. Southtrust Bank of Ala.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *In re S. Co. S'holder Derivative Litig.*, 1:17-CV-725-MHC, 2022 WL 4545614, at *5, (N.D. Ga. June 9, 2022). A court's determination

---

[3] At the time *Bennett* was decided and set forth the standard for whether settlement agreements are "fair, reasonable, and adequate," there were no textual factors from Rule 23(e) guiding the analysis. In 2018, the Rule was amended to add the referenced textual factors. The Parties address the Rule 23 textual factors and the *Bennett* factors here.

concerning whether to approve a settlement as fair, adequate, and reasonable is subject to review under an abuse of discretion standard. *Bennett,* 737 F.2d at 987.

### b. Fed. R. Civ. P. 23(e)(2) Factors Favor Final Approval of the Settlement Agreement.

The Rule 23(e)(2) factors favor settlement. Class representatives and Class Counsel have adequately represented the class by negotiating a favorable settlement providing substantial relief to all class members without requiring that they make a claim.

The Settlement Agreement is the product of an informed arms-length negotiation, without collusion, by experienced counsel. *See Hughes v. Microsoft Corp.*, C93-0178C, 2001 WL 34079697, at *7 (W.D. Wash. Mar. 26, 2001) ("In determining whether to approve a settlement, the Court keeps in mind the unique ability of Class Counsel to assess potential risks and rewards of litigation."). Settlement negotiations occurred with an experienced mediator with class settlement experience and included an "all day" face-to-face mediation session. Parker Decl. ¶¶ 9-13. Therefore, the "nature of the negotiations" also weighs in favor of settlement approval.

The relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). As shown above, each Class Member will receive $5,648.55 for uncertain claims that would take years to fully litigate. Decl. of Daniel Werner in Support of Pls.' App. for an Award of Attorneys' Fees and Expenses, Doc. 154-1 ("Werner

Decl."), at. ¶ 8. Further, members of the FLSA collective will receive an additional amount of $173.31 per workweek, which is an average of $5,000 per collective member. Doc. 140-1 at 18.

The method of distribution is well thought out and takes into consideration that some Class Members are in Mexico. There is no requirement for Class Members to make claims, class counsel will for six months continue their outreach to Class Members by phone, mail (updated address searches), WhatsApp, and text, and the Gross Settlement Fund is non-reversionary. Doc. 140-1 at 7. The request for attorneys' fees and costs of $478,500 is reasonable. It is a significant reduction from Class Counsel's lodestar. Werner Decl. at ¶ 38. Plaintiffs submit that the fees requested are reasonable and refer the Court to their Unopposed Motion for Attorneys' Fees and Costs relating to the fee factor. Doc. 154. There are no other agreements required to be identified under Rule 23(e)(3).

The Settlement treats class members equitably relative to each other and recognizes that their damages in the lawsuit are economic in nature, may be trebled and subject to punitive damages under the Georgia RICO,[4] O.C.G.A. § 16-14-6(c), and principally arise out of pre-employment costs Plaintiffs contend were incurred in reliance on the alleged misrepresentations about the nature of the work. Class Members also had potential minimal damages arising out of the false information returns claim. 26 U.S.C. § 7434. While the Settlement does not compensate Class Members for the full extent of their potential damages—particularly factoring in potential punitive damages—it nevertheless allows each

---

[4] Damages arising out of the contract and quasi-contract claims were, for the most part, duplicative of the base Georgia RICO economic damages.

Class Member to recover a significant majority (in many cases – in excess of) alleged pre-employment costs. No Class Members objected to the distribution model. Valadez Decl. at ¶ 13. Further, at the time of this submission, Plaintiffs have agreed to a settlement in principle with Defendant TESS, which would provide for additional class-wide relief. Absent the recent settlement in principle, Plaintiffs were prepared to vigorously pursue class claims against TESS.

The Settlement therefore should be approved based on the textual factors of Fed. R. Civ. P. (e)(2).

### c. The *Bennett* and *Leverso* Factors Favor Final Approval of the Settlement Agreement.

The Settlement also should be approved based on the six factors listed by the Eleventh Circuit in *Bennett* and *Leverso*. *Bennett*, 737 F.2d at 986; *Leverso*, 18 F.3d at 1530 n.6.

1. **Likelihood of Success at Trial (factor 1):** The Settlement Agreement provides relief that Class Counsel believe constitutes the bulk of the likely recovery at trial. Given the difficulties Plaintiffs would have to overcome if they were to litigate these cases through class certification and to verdict, the recovery under the terms of the Settlement is fair, adequate, and reasonable. While Plaintiffs and their counsel believe the claims are meritorious, Defendants have raised, and would continue to raise, challenges to class certification and to the legal and factual basis for Plaintiffs' claims. Throughout the litigation, and even now, Defendants vigorously deny that they engaged in any misrepresentations or wrongful conduct and deny that the case can be litigated as a class action under Fed. R. Civ. P. 23. There was no guarantee or certainty of Plaintiffs' success at trial or that the case would be certified as a litigated class action. The Settlement Agreement

14

proposed by the Parties immediately provides the certainty of valuable and substantial benefits to the Settlement Class Members in the form of money.

2. **Considering the range of recovery, the point below the range is fair, adequate, and reasonable (factors 2 and 3):** The amount of the class benefit is a substantial percentage of what any Settlement Class Member could expect to receive as a successful litigant. Class Counsel believe that the Settlement Agreement provides recovery to Settlement Class Members that constitutes well over half what the Class Members would receive if fully successful at trial.

The Settlement Class Members will receive a fair percentage of the maximum amount they could possibly receive through successful litigation. Courts have held that class recoveries between 13% and 20% are "frequently found . . . to be fair and adequate." *Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267-AKK, 2015 WL 13629647 at *3 (N.D. Ala. Feb. 15, 2015). This Settlement Agreement provides recovery significantly above that range and is therefore fair, adequate, and reasonable.

3. **The complexity, expense, and likely duration of litigation (factor 4),** also weigh heavily in favor of settlement approval. This case is complex and Plaintiffs assert complex federal claims. Plaintiffs and Class Members are Mexican, non-U.S. citizens and many no longer reside in the United States. Class Counsel would expect the litigation to continue for years. Class certification is always uncertain and can result in substantial delay, including extensive class discovery, certification briefing, and Rule 26(f) petitions. This Settlement Agreement creates a result that will provide significant relief and avoid the expected lengthy litigation.

4. **The substance and amount of opposition to the settlement (factor 5)** support granting final approval. There has been no opposition to the settlement. The deadline to object or request exclusion from the settlement was October 28, 2025. Doc. 143 at ¶ 18. No Class Members objected or requested exclusion. Valadez Decl. at ¶ 13.

5. **The stage of proceedings (factor 6)** supports approval of the settlement. Class Counsel and Defendants' counsel have experience litigating similar claims under similar facts and are aware of the legal issues and the extensive time it takes to litigate such claims. Based upon considerable experience in handling cases such as the present case, counsel for Plaintiffs and Defendants are well suited to determine the need and the value of settling the present case while it is in its early stages. *Id.* The Parties were able to avoid exhausting additional resources on expenses and attorneys' fees completing discovery, briefing the contested litigation class certification issue, retaining experts and taking expert discovery, preparing and opposing dispositive motions, and preparing for and conducting the trial. Rather, the Parties determined they would better allocate their resources towards settlement.

Accordingly, the fact that this litigation was still in discovery with significant time and expenses on the horizon weighs in favor of the Court's approval of the settlement.

### D. The Requested Attorneys' Fees are Fair and Reasonable

Plaintiffs filed their Unopposed Motion for Attorneys' Fees and Costs, Doc. 154, on October 13, 2025, which was fifteen days before the deadline for objections or requests for exclusion. The Motion for Attorneys' Fees requests attorneys' fees

of $471,162.36 ($478,500.00 minus $7,337.64 in expenses). Conservatively accounting for prospective attorneys' fees and costs associated with administering notice, this Motion, and distributing settlement proceeds, this is almost twenty percent below Plaintiffs' expected final lodestar; effectively a negative multiplier.[5] Plaintiffs submit that the requested fees are reasonable on the grounds set forth in the Unopposed Motion for Attorneys' Fees and Costs.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement and certify the Settlement Class, and enter the Proposed Order attached hereto.

[Signature blocks on the following page]

---

[5] Class Counsel's lodestar request excludes all time devoted to litigating claims against Defendant TESS—even though the addition of TESS as a Defendant was closely related to and necessary for achieving the settlement with the Settling Defendants. *See In re Home Depot Inc. Customer Data Security Breach Litig.*, 931 F.3d 1065, 1081–87 (11th Cir. 2019) (approving inclusion of related work that materially advanced the recovery obtained for the class). By omitting compensable time associated with Defendant TESS and applying an additional twenty-percent across-the-board reduction to the remaining lodestar, Class Counsel's request reflects a substantial discount from the total hours reasonably expended and thus underscores the overall reasonableness of the fee petition. Further, if the class settlement in principle with TESS is approved, Class Counsel would receive less than half their total attorneys' fees arising out of the claims against TESS.

Respectfully submitted this day: November 5, 2025.

*/s/ Daniel Werner*
Daniel Werner
Georgia Bar No. 422070
dwerner@radfordscott.com
Zachary Panter
Georgia Bar No. 822012
zpanter@radfordscott.com
RADFORD SCOTT, LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
Telephone: (678)271-0300

Christopher B. Hall
Georgia Bar No. 318380
chall@hallandlampros.com
HALL & LAMPROS, LLP
300 Galleria Parkway, Suite 300
Atlanta, GA 30339

Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@beal.law
Brian J. Sutherland
Georgia Bar No. 105408
brian@beal.law
BEAL SUTHERLAND BERLIN &
BROWN LLC
945 East Paces Ferry Rd NE
Suite 2000
Atlanta, GA 30326

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| Osvaldo de la Fuente and Victor Hugo Tapia Romero )<br>)<br>)<br>     Plaintiffs, )<br>)<br>v. )<br>)<br>Columbia Recycling Corp. and Gold Pond Corp.; and Total Employee Solution Support, LLC. )<br>)<br>)<br>     Defendants. ) | Civil Action File No.<br>4:22-cv-00256-WMR<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

CERTIFICATE OF FONT AND SERVICE

This is to certify that on November 5, 2025, I prepared the foregoing in Book Antiqua, 13-point type in accordance with L.R. 5.1(C) and that I electronically filed the document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

> */s/ Daniel Werner*
> Daniel Werner
> Co-Counsel for Plaintiffs